MOORE, Chief Justice.
South Alabama Gas District appeals to this Court from an order of the Clarke Circuit Court enjoining it from selling liquified petroleum (“LP”) gas and related appliances outside its member cities. We dismiss the appeal and order the trial court to vacate the injunction.

I. Facts and Procedural History

To facilitate the provision of natural gas to rural areas in Alabama, state law authorizes two or more municipalities to create a “gas district.” § 11-50-390 et seq., Ala.Code 1975. These districts have significant competitive advantages over private providers of natural gas. As a condition for operating outside the cities composing the gas district (known as “member cities”), a gas district must provide notice and a buy-out offer to any preexisting “plant and system” with which it might compete. See § 11-50-266, Ala.Code 1975, made applicable to gas districts by § 11-50-399, Ala.Code 1975. In *973 1961, the cities of Evergreen and Monroe-ville formed the Conecuh-Monroe Counties Gas District, which in 2001 changed its name to South Alabama Gas District (“SAG”). In 1999, SAG began selling LP gas outside its member cities. SAG, however, did not provide notice and buy-out offers to competitors.
On May 18, 2010, four individual taxpayers and Fletcher Smith Butane Co., Inc., sued SAG, seeking both an injunction and damages for SAG’s alleged violation of § 11-50-266, as made applicable to gas districts by § 11-50-399. The trial court bifurcated the claim for injunctive relief and the damages claim and on October 7, 2011, held a bench trial on the claim for injunctive relief. SAG argued that the notice and buy-out provisions did not apply to it because LP gas is not a “manufactured gas” within the terms of the statute. The trial court found otherwise and enjoined SAG from selling LP gas and related appliances outside its member cities if it did not comply with § 11-50-266.[1] SAG appealed the injunction to this Court.
We first address the claims of the individual taxpayers.

II. The Taxpayer Plaintiffs

In their amended complaint plaintiffs Kerry W. and Christy Knight and Kirklyn and Regina Gwin identify themselves as adult residents of the City of Thomasville and of Clarke County. They allege “standing to bring this claim contesting the legality of South Alabama Gas’ activities because the City of Thomasville and Clarke County are deprived of the tax and other revenue to which they are entitled.” In particular, they claim harm resulting from the tax advantages provided to SAG as a public corporation. See Henson v. HealthSouth Med. Ctr., Inc., 891 So.2d 863, 868 (Ala.2004) (noting that “a taxpayer has standing to challenge a tax abatement conferred upon another taxpayer ... so long as the taxpayer can demonstrate a probable increase in his tax burden from the challenged activity”).
The trial court in its order of April 2, 2012, found that the taxpayers had failed to carry their burden of proving that “tax increases probably resulted from SAG’s tax reduction.” Thus, they “lack[ed] standing to challenge SAG’s appliance sales.” Although the trial court limited its findings to the topic of appliance sales, logically the taxpayers’ failure to prove harm requires dismissal of all their claims.

III. Fletcher Smith Butane Co., Inc.

A. Fletcher Smith’s Admissions

On April 5, 2012, SAG appealed the injunction to this Court. See Rule 4(a)(1)(A), Ala. R.App. In its opening brief SAG argues, among other things, that Fletcher Smith no longer has standing because it has “sold its assets and is no longer engaging in the LP gas business.” SAG’s brief, at 54.[2] As proof, SAG cites Fletcher Smith’s October 10, 2012, re *974 sponse to “Requests for Admissions of Fact,” which is included in the record on appeal. The relevant requests and Fletcher Smith’s responses are as follows:
“1. Admit that Plaintiff Fletcher Smith Butane Co., Inc., a corporation, is no longer in the business of selling or distributing propane gas.
“RESPONSE: ... [Fletcher Smith] states that it is not currently selling or distributing propane gas due to the asset sale described-herein.
“2. Admit that the assets of Fletcher Smith Butane, Co., Inc., have been recently sold and assigned.
“RESPONSE: [Fletcher Smith] admits that it has sold assets to Parden Gas.
“3. Admit that the sales agreement for Fletcher Smith Butane Co., Inc., Usted the assets sold with assigned value to each asset.
“RESPONSE: ... [T]he sales agreement speaks for itself....
[[Image here]]
“6. Admit that Fletcher Smith Butane Co., Inc., present [sic] has no tangible assets.
“RESPONSE: ... [T]he Company has no current real or personal property-

U

“10. Admit that Fletcher Smith Butane Co., Inc., is not in competition with South Alabama Gas.
“RESPONSE: Denied.”
These admissions raise a question we must examine as to whether the necessary adversity of interests still exists between Fletcher Smith and SAG for this action to continue. “A plaintiff must be so situated that he or she will bring the requisite adverseness to the proceeding. A plaintiff must also have a direct stake in the outcome....” Hamm v. Norfolk Southern Ry., 52 So.3d 484, 500 (Ala.2010) (Lyons, J., concurring specially). If Fletcher Smith, having left the propane business, can no longer benefit from prospective relief against SAG, the injunction is moot. “[W]e must inquire, as a threshold matter ... whether this case involves a justiciable controversy or whether it has been mooted_” Underwood v. Alabama State Bd. of Educ., 39 So.3d 120, 126 (Ala.2009).
Fletcher Smith in its response brief in this Court does not deny the existence of the admissions. It instead attempts to mitigate their effect, stating that “these responses [to requests for admissions] do not state that [Fletcher Smith] is no longer in [the LP gas] business. Instead, the responses state that [Fletcher Smith] is not currently selling LP gas.” Fletcher Smith’s response brief, at 50. Fletcher Smith also refuses to admit that it is no longer in competition with SAG. Id. We do not consider these responses adequate to rebut the allegation of mootness. Although Fletcher Smith did not directly admit that it “is no longer in the business of selling or distributing propane gas,” its response that “it is not currently selling or distributing propane gas due to the asset sale described herein” indicates that it lacks prospective injury from SAG’s sales of propane, i.e., LP gas. Its bare denial that it is not in competition with SAG hardly counterbalances its admissions that it sold its assets to Parden Gas via a sales agreement that left it with “no current real or personal property.”

B. Effect of the Admissions

When an action becomes moot during its pendency, the court lacks power to further adjudicate the matter.
“ ‘The test for mootness is commonly stated as whether the court’s action on the merits would affect the rights of the *975 parties.’ Crawford v. State, 153 S.W.3d 497, 501 (Tex.App.2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex.1993)). ‘A case becomes moot if at any stage there ceases to be an actual controversy between the parties.’ Id. (emphasis added) (citing National Collegiate Athletic Ass’n v. Jones, 1 S.W.3d 83, 86 (Tex.1999)).”
Chapman v. Gooden, 974 So.2d 972, 983 (Ala.2007) (first emphasis added). See also Steffel v. Thompson, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (“[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.”).
Although Fletcher Smith may have viable legal claims based on SAG’s past actions, it is not entitled to injunctive relief if SAG’s future sales of LP gas can cause it no harm. See American Fed’n of State, Cnty. & Mun. Emps. v. Dawkins, 268 Ala. 13, 18, 104 So.2d 827, 830 (1958) (“To be entitled to claim equitable relief, the complainant must show a controversy which will cause actual harm to him.”). See also O’Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (“Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.”). The trial court’s injunction order indicates that it desired to mitigate the adverse effects upon Fletcher Smith of SAG’s tax advantages and also to require SAG to follow the notice and buy-out provisions of the gas-district statutes. This relief is meaningless if Fletcher Smith is no longer a participant in the LP gas market.
“ ‘The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.’ ”
King v. Campbell, 988 So.2d 969, 976 (Ala.2007) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).

C. Mootness on Appeal

Events occurring subsequent to the entry or denial of an injunction in the trial court may properly be considered by this Court to determine whether a cause, justiciable at the time the injunction order is entered, has been rendered moot on appeal. “[I]t is the duty of an appellate court to consider lack of subject matter jurisdiction....” Ex parte Smith, 438 So.2d 766, 768 (Ala.1983). “[J]usticiability is jurisdictional.” Ex parte State ex rel. James, 711 So.2d 952, 960 n. 2 (Ala.1998). A justiciable controversy is one that “is definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a decree.” Copeland v. Jefferson Cnty., 284 Ala. 558, 561, 226 So.2d 385, 387 (1969). A case lacking ripeness has yet to come into existence;[3] a moot case has died.[4] Between the two lies the realm of justiciability. See 13B Charles Alan Wright et al., Federal Practice and Procedure § 3533 (3d ed. 2008) (“It is not *976 enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition
Fletcher Smith’s admissions, although entered into the record on appeal after the trial court entered its order granting the request for the injunction, are properly before us for consideration of the question of mootness. “[B]eeause mootness is a jurisdictional issue, we may receive facts relevant to that issue; otherwise there would be no way to find out if an appeal has become moot.” Clark v. K-Mart Corp., 979 F.2d 965, 967 (3d Cir.1992). See also Jeffrey C. Dobbins, New Evidence on Appeal, 96 Minn. L.Rev.2016, 2030 (2012) (“[A]llegations that a case is moot on appeal will often require an appellate court to consider what is technically new evidence.”).

1. Cases dismissing appeals for mootness

We have previously dismissed appeals when events occurring subsequent to the entry of the order or judgment being appealed rendered the controversy moot. After granting a petition for a writ of mandamus that provided the same relief sought in a pending appeal, this Court dismissed the appeal, noting that “[a]n action that originally was based upon a justi-ciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events.” Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala.2006). This Court thus took notice of a fact occurring six months after entry of the trial court’s judgment to dismiss the appeal as moot. In Woods v. SunTrust Bank, 81 So.3d 357 (Ala.Civ.App.2011), the court held as alternative grounds for dismissing an appeal from the denial of an injunction to prevent a foreclosure that the matter was moot as a result of occurrence of the foreclosure “[ajfter the trial court entered its order.” Id. at 363. The court thus took cognizance of an event occurring subsequent to entry of the order being appealed to hold that the appeal had become moot.
In Employees of Montgomery County v. Marshall, 893 So.2d 326 (Ala.2004), based on a fact first disclosed in a footnote in the appellant’s opening brief, this Court dismissed as moot an appeal from the denial of an injunction. “This Court will dismiss an appeal from the denial of an injunction,” the Court stated, “when an event occurring after the denial of the injunction renders the appeal moot.” 893 So.2d at 330. Similarly, in Masonry Arts, Inc. v. Mobile County Commission, 628 So.2d 334 (Ala.1993), this Court dismissed an appeal as moot based on the award of a contract after the entry of the order being appealed. See also Morrison v. Mullins, 275 Ala. 258, 259, 154 So.2d 16, 18 (1963) (“[I]f an event happening after hearing and decree in circuit court, but before appeal is taken, or pending appeal, ... renders it clearly impossible for the appellate court to grant effectual relief, the appeal will be dismissed.” (emphasis added)). Thus, events occurring subsequent to an order granting or denying an injunction in the trial court may properly be consulted by this Court to determine whether a cause, justiciable at the time of entry or denial of the injunction, has been rendered moot on appeal. The filing of the record on appeal containing Fletcher Smith’s admissions is such an event.

2. Mootness caused by going out of business

Other jurisdictions have dismissed appeals as moot based on facts similar to those in this case. In particular, a plaintiffs action for an injunction becomes moot on appeal when it leaves the business *977 whose alleged injury gave rise to the cause of action. “[A] case on appeal normally is rendered moot when the appellant closes its business and, as a result, no longer has a cognizable interest in the outcome of the dispute.” Munsell v. Department of Agric., 509 F.3d 572, 582 (D.C.Cir.2007). See also City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 283, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001) (learning after issuance of writ of certiorari that petitioner “has ceased to operate as an adult business,” the Court dismissed the writ, holding that the case “no longer qualifies for judicial review”); Board of License Comm’rs of Tiverton v. Pastore, 469 U.S. 238, 240, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985) (dismissing writ of certiorari as moot after briefing and oral argument upon learning that liquor lounge had gone out of business, thus “depriving the Court of jurisdiction due to the absence of a continuing case or controversy”); and Lucero v. Trosch, 121 F.3d 591, 596 (11th Cir.1997) (holding that sale of abortion business rendered moot an action for injunction as to former owner).
The same principle applies to a sale of assets. See Young’s Realty v. Brabham, 896 So.2d 581, 583 (Ala.Civ.App.2004) (granting motion to dismiss after appellate briefs had been filed because sale of condominium unit “rendered nonjusticiable” declaratory-judgment action seeking relief against condominium owners’ association); R.M. Inv. Co. v. United States Forest Serv., 511 F.3d 1103 (10th Cir.2007) (upholding district court’s dismissal for mootness when plaintiff sold property the use of which was at issue in case).
3. Assessing whether a live controversy s till exists
Fletcher Smith argues that its admissions that it sold all of its assets, that it has no current real or personal property, and that it is no longer selling LP gas do not mean that it is no longer in the LP gas business or in competition with SAG. However, “a live controversy is not maintained by speculation that claimant might reenter a business that it has left.” Munsell, 509 F.3d at 582. A matter is moot if a court decision will not have “a more-than-speculative chance” of affecting a party’s rights in the future. Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C.Cir.1990). Likewise, a claim for in-junctive relief is moot when the future resumption of business is “ ‘purely a matter of speculation.’ ” JSLG, Inc. v. City of Waco, 504 Fed.Appx. 312, 315 (5th Cir.2012) (unpublished) (quoting Spencer v. Kemna, 523 U.S. 1, 16, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). See also Hall v. Beals, 396 U.S. 45, 49-50, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (noting that “speculative contingencies” are insufficient to avoid mootness). In short, “[m]atters that may or may not occur in the future are not matters in controversy.” Case, 939 So.2d at 884. See also Iron Arrow Honor Soc’y v. Heckler, 464 U.S. 67, 71, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) (“Future positions taken by the parties might bring such issues into controversy, but that possibility is simply too remote from the present controversy to keep this case alive.”). Fletcher Smith cannot maintain its status on appeal as a party for whose benefit the injunction was entered when by its own admissions it can no longer show “sufficient immediacy and reality” of future injury to warrant invocation of the judicial process. O’Shea v. Littleton, 414 U.S. at 497.

IV. Conclusion

Under the reasoning of Henson, 891 So.2d at 868, the taxpayer plaintiffs lack standing. Alternatively, their claims fail on the merits, as the trial court stated in its order. They therefore are not entitled to injunctive relief. Based on its admis *978 sions, Fletcher Smith’s claims for prospective relief have become moot. “Because mootness goes to justiciability, this Court will not consider the merits of a claim that is moot.” Town of Elmore v. Town of Coosada, 957 So.2d 1096, 1100 (Ala.2006). The appeal is dismissed as moot, and the Clarke Circuit Court is directed to vacate as moot the injunction entered in this cause.
APPEAL DISMISSED.
STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
SHAW and BRYAN, JJ., concur in the result.
MURDOCK, J., concurs in the rationale in part and concurs in the result.

. On April 27, 2012, pursuant to Rule 62(c), Ala. R. Civ. P., the trial court stayed, pending appeal, that "portion of the injunction prohibiting SAG from conducting LP gas sales outside its member cities,” subject to two conditions: “1. SAG must pay into an interest-bearing escrow account 5% of its gross revenues from its sales of LP gas outside its member cities. 2. SAG is prohibited from paying any member city or franchised city any payment from the sale of LP gas pending the outcome of the appeal.”

. "If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result.” Cardinal Chem. Co. v. Morton Int’l, Inc., 508 U.S. 83, 98, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

. Ripeness is "[t]he state of a dispute that has reached, but has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made.” Black’s Law Dictionary 1442 (9th ed.2009).

. A mootness analysis "concentrate[s] attention on the peculiar problems of a suit's death, rather than its birth.” 13B Charles Alan Wright et al., Federal Practice and Procedure § 3533.1 (3d ed.2008).